STEWART, J.
_JjP & S Surgery Center, L.L.C. (“P & S”), a defendant in this medical malpractice action, sought supervisory review of the trial court’s denial of a motion for summary judgment. We granted the writ and ordered the matter briefed and docketed. Because the plaintiffs will be unable to meet the burden of proving causation, an essential element of their claim, we find that summary judgment dismissing the plaintiffs’ claims as to P & S is appropriate.
FACTS
Shelly McClendon (“McClendon”) was scheduled to have a hysterectomy and sal-pingo-oophorectomy at P & S on June 6, 2003. McClendon’s OB/GYN, Dr. Ardri-enne Williams (“Dr. Williams”), was to perform surgery with Dr. Rosemary Stage (“Dr. Stage”), an anesthesiologist. On June 4, 2003, McClendon underwent radiology and laboratory procedures, including a pregnancy test, in preparation for surgery. On the day of the surgery, McClendon was given various medications, including Versed (also referred to as mi-dazolam) and Decadron, on Dr. Stage’s orders. Some time after the administration of these medications but before McClendon underwent surgery, it was learned that her pregnancy test was positive. Dr. Williams canceled the surgery.
On June 9, 2003, McClendon saw Dr. Williams for an ultrasound, which showed an early intrauterine pregnancy. McClen-don miscarried on June 16, 2003. About one month later, McClendon had the hysterectomy. Dr. Williams operated, and Dr. Stage provided anesthesia.
I {.On May 26, 2006, McClendon and her husband, Johnny McClendon, filed a medical malpractice suit against P & S, Dr. Williams, and Dr. Stage. They alleged that the defendants breached the standard of care in failing to properly interpret the laboratory diagnostics indicating a positive pregnancy test, in referring a pregnant patient to radiology, and in administering medications contraindicated for pregnant patients. They alleged that the defendants’ negligence caused the miscarriage as well as physical and emotional suffering by McClendon.
On April 30, 2007, P & S filed a motion for summary judgment on the grounds that McClendon had not identified any medical expert who would testify that P & S caused the damages alleged, specifically, the miscarriage. In support of its motion, P & S offered the Medical Review Panel opinion. The panel, comprising specialists in obstetrics and gynecology, concluded that P & S failed to comply with the standard of care by not properly charting the results of the pregnancy test and notifying Dr. Williams that it was positive so that she could have canceled the surgery earlier. However, the panel also concluded that P & S’s failure to comply with the standard of care was not a factor in the alleged damages. The opinion stated, “The pre-operative [sic] x-ray and the anesthesia administered did not cause the miscarriage.”
P & S also offered a report by a legal nurse consultant, Nancy McNamara (“McNamara”), who opined that McClen-don’s pregnancy should have been discov *218 ered before she was given medications pri- or to surgery on June 6, 2003. However, in her research of medical literature, |3McNamara could find no connection between the medications administered to McClendon and the risk of a miscarriage.
McClendon opposed P & S’s motion, asserting that there are genuine issues of material fact as to whether P & S breached the standard of care and whether the medications administered prior to surgery caused the miscarriage. McClendon offered the affidavit of William C. Coney, M.D., a general practitioner who had been her primary physician. Like the medical review panel, Coney concluded that P & S failed to meet the standard of care by not charting or reporting the positive pregnancy test prior to the scheduled surgery. However, Coney also concluded that the administration of Versed caused the miscarriage.
On October 7, 2009, P & S filed a motion in limine to prohibit Dr. Coney from testifying as an expert concerning any causal relationship between the medications administered to McClendon and miscarriages. P & S argued that as a family practitioner, Dr. Coney was not qualified to testify about anesthetics and that there were no studies to substantiate his opinion that Versed caused McClen-don’s miscarriage.
In the meantime, plaintiffs obtained another expert, Dr, Karl Haydel (“Dr. Haydel”), an anesthesiologist, and filed his affidavit in opposition to a motion for summary judgment by Dr. Stage, who like P & S was also seeking summary judgment based on the lack of evidence as to causation. Dr. Haydel’s affidavit relates that Versed is a benzodiazepine and is considered a Class D drug by the Food and Drug Administration, meaning that it poses a demonstrated risk to a fetus. The affidavit notes that there Chave been few studies concerning the use of benzodiazepines during human pregnancies and that the data is inconclusive. The affidavit states that it is standard practice among anesthesiologists not to use Versed on pregnant patients, particularly during the first trimester.
Dr. Haydel’s affidavit refers to Decadron as a steroid and a Class C drug that also poses some risks to a fetus. His affidavit states that both drugs can increase the stress of a pregnant patient and that stress can increase the risk of a miscarriage. The affidavit concludes with Dr. Haydel’s opinion that the “administration of one or both of the drugs contributed to the altering of Mrs. McClendon’s physical and chemical make-up that ultimately led to the destruction of her fetus.”
On January 14, 2011, P & S filed a motion in limine to prohibit Dr. Haydel from testifying as to causation. The motion was básed on Dr. Haydel’s deposition in which he admitted that it cannot be proven or known whether the administration of Versed and the other drugs caused the miscarriage. He also admitted that his opinion regarding causation was based on his subjective belief, not any scientific data or research.
At the hearing on the motions in limine on March 29, 2011, counsel for McClendon conceded that Dr. Coney is not qualified to testify as an expert in this matter. After hearing arguments, the trial court granted the motion in limine as to Dr. Haydel to prohibit him from testifying as to causation, specifically that Versed or Decadron caused or contributed to the alleged harm. The trial court did permit Dr. Haydel to testify as to the | .¡standard of care and breach, such as that the administration of Versed during the first trimester of pregnancy is a breach of the standard of care.
*219 On September 29, 2011, P & S reurged its motion for summary judgment, asserting that McClendon would be unable to produce any admissible evidence to prove causation. McClendon again opposed the motion and offered a new affidavit by Dr. Haydel. This second affidavit states that current medical literature supports his opinion that Versed is “strongly contraindicated for use during pregnancy.” He notes that fetal toxicity had been observed with other benzodiazepines. He opines that the absence of data on the use of Versed during the first two trimesters of pregnancy “cannot be taken to mean ... that Versed is not harmful or causative of harm to a first trimester fetus, if in fact, one is spontaneously aborted following the administration of the drug!”
On September 20, 2012, P & S’s motion for summary judgment was argued by the parties and denied by the trial court without any explanation for its ruling. After the judgment was signed on April 2, 2012, P & S sought supervisory review. This court granted the writ, and the matter is now before us for a de novo review of the motion for summary judgment. See Samaba v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. The issue, as presented by P & S, is whether the plaintiffs have submitted factual support sufficient to show that they will be able to meet their evidentiary burden of proving causation at a trial.
I rDISCUSSION
A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The burden of proof on a motion for summary judgment is set forth in La. C.C.P. art. 966(C)(2):
The burden of proof remains with the movant. However, if the movant -will not bear the burden of proof at trial on the matter that is before the court on summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
A medical malpractice claimant has the burden of proving, by a preponderance of the evidence, the following: (1) the standard of care applicable to the defendant; (2) the defendant’s breach of the standard of care; and (3) a causal connection between the breach and the resulting injuries. La. R.S. 9:2794: Samaha, supra; Jones v. Hernandez, 38,818 (La.App.2d Cir.8/18/04), 880 So.2d 245, writ denied, 2004-2319 (La.11/19/04), 888 So.2d 203.
In Pfiffner v. Correa, 94-0924, p. 9 (La.10/17/94), 643 So.2d 1228, 1234, the supreme court held that “expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim,” such as where a lay person can perceive negligence on the part of the defendant as well as an expert can, or where the 17defendant/physician testifies as to the standard of care and objective evidence is presented to demonstrate the breach. However, the court noted that the plaintiff is still required to “demonstrate by a preponderance of the evidence a causal nexus between the defendant’s fault and the alleged injury.” Id.
*220 In most cases, the plaintiff will require expert testimony to establish the standard of care, whether it was breached, and whether the breach caused the alleged injuries. Jones, supra. As to causation, which is at issue in P & S’s motion for summary judgment, this court has addressed the plaintiffs burden of proof:
A medical malpractice plaintiff must show that, as a result of the defendant’s negligence, he suffered injuries that would not otherwise have occurred. The plaintiff need not show that the defendant’s conduct was the only cause of harm, nor must he negate all other possibilities. Rather, he must show by a preponderance of the evidence, or more probably than not, that he suffered the injury because of the defendant’s conduct. [Citation omitted.] Where it is equally plausible that the defendant’s negligence caused the injury as it is that the injury was caused otherwise, the plaintiff fails to prove that, more probably than not, the injury was the result of negligence.
Gordon v. Louisiana State University Bd. of Sup’rs, 27,966, p. 4-5 (La.App.2d Cir.3/1/96), 669 So.2d 736, 740, writ denied, 96-1038 (La.5/31/96), 674 So.2d 263.
P & S argues that it met its burden by introducing the medical review panel opinion, which concluded that its failure to comply with the standard of care was not a factor in McClendon’s alleged damages. P & S also presented a report by a nurse consultant, McNamara, whose research of | ¿medical literature produced no connection between the drugs administered to McClendon and the risk of a miscarriage.
The medical review panel’s opinion regarding causation was stated in a cursory fashion, without any discussion as to how it reached its conclusion. However, for purposes of its motion for summary judgment, P & S need only point out the absence of factual support for one or more elements of the plaintiffs’ claim. P & S asserts that the plaintiffs have not come forth with any admissible evidence to show that they will be able to meet their evidentiary burden of proving causation at trial.
To show that they will be able to meet their evidentiary burden at trial, plaintiffs rely on Dr. Haydel and argue that his affidavit is properly before this court for consideration notwithstanding the ruling on the motion in limine.
In granting the motions in limine filed by P & S and Dr. Stage, the trial court ruled that Dr. Haydel cannot testify as to causation. This ruling was supported by Dr. Haydel’s deposition in which he admitted that whether the administration of Versed and the other drugs caused McClendon’s miscarriage cannot be proven or known. The plaintiffs have not appealed this ruling. Thus, the ruling stands, and Dr. Haydel is prohibited from testifying as to causation.
Contrary to the ruling on the motion in limine, Dr. Haydel’s second affidavit again included his opinion on causation. Even considering this second affidavit, we must conclude that the plaintiffs failed to produce factual support sufficient to show that they will be able to meet their 19evidentiary burden of proving causation at trial. The gist of Dr. Haydel’s affidavit is that Versed (midazolam) is contraindicated for pregnant women and that it is not the standard of care to administer this drug to pregnant women except where the necessity would outweigh the potential risks. He suggests that the warnings against its use for pregnant women coupled with the administration of Versed to McClendon and her subsequent miscarriage establish a causative link. The research Dr. Haydel relies on from the Electronic Medicines Compendium (“eMC”) *221 warns against the use of Versed / midazo-lam during pregnancy but does not refer to a risk of a miscarriage in humans from its use. Plaintiffs rely on Dr. Haydel’s subjective opinion, rather than any objective evidence, that the use of Versed caused the miscarriage or otherwise resulted in injury to McClendon.
In the absence of any objective evidence or admissible expert testimony as to causation, plaintiffs will not be able to prove by a preponderance of the evidence that McClendon suffered injuries that would not otherwise have occurred. There is no indication of injuries to McClendon other than the miscarriage and the related physical and emotional suffering. McClendon was 36 at the time of the scheduled surgery. She was to undergo, and later did undergo, a hysterectomy because of preexisting gynecological problems. It is equally plausible that her miscarriage was caused by factors other than the drugs administered to her before discovery of the positive pregnancy test.
110Because the plaintiffs have not produced factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proving causation at trial, we are constrained to find that there is no genuine issue of material fact and that summary judgment is appropriate.
CONCLUSION
For the reasons stated, we reverse the trial court’s ruling, hereby grant the motion for summary judgment, and dismiss with prejudice the claims against P & S Surgery Center, L.L.C. Costs are assessed against the plaintiffs.
REVERSED and RENDERED.
MOTION FOR SUMMARY JUDGMENT GRANTED.