981 So.2d 807 (2008)
Anna THOMAS, Plaintiff-Appellant
v.
WILLIS-KNIGHTON MEDICAL CENTER, et al., Defendants-Appellees.
No. 43,176-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
*809 Doucet, Speer & Gibbens, by J. Louis Gibbens, III, Lafayette, for Plaintiff-Appellant.
Watson, Blanche, Wilson & Posner by P. Chauvin Wilkinson, Jr., Baton Rouge, for Defendant-Appellee Willis-Knighton, Medical Center.
Pugh, Pugh & Pugh, by Robert G. Pugh, Jr., Shreveport, for Defendant-Appellee Dr. Thomas M. Smith.
Before GASKINS, WILLIAMS and STEWART, JJ.
GASKINS, J.
The plaintiff, Anna Thomas, appeals a grant of summary judgment in favor of the defendants, Willis-Knighton Medical Center and Dr. Thomas Smith. For the following reasons, we affirm the trial court judgment.

FACTS
On October 23, 2000, the plaintiff went to the emergency room at Willis-Knighton Bossier Health Center complaining of chest discomfort. She was admitted for congestive heart failure and uncontrolled hypertension. She also had ongoing medical problems including peripheral vascular disease, abdominal aortic aneurysm, arteriosclerotic cardiovascular disease, hyperlipidemia, chronic obstructive pulmonary disease, hepatic and renal cysts, and chronic gastritis. She was seen by Dr. Smith, a cardiologist. A stress test was negative and she was discharged on October 26, 2000. On October 30, 2000, the plaintiff was again admitted to the hospital with shortness of breath and chest discomfort. It was determined that the plaintiff had some heart blockage. Dr. Smith performed a percutaneous transluminal coronary angiography on November 1, 2000, and inserted several stents to relieve the plaintiff's blockages. That day, shortly after insertion of the stents, the plaintiff had additional problems in the areas of the stents. She was returned to the cardiac catheterization lab where some areas were re-stented.
Shortly following these procedures, the plaintiff had a drop in her oxygen level and blood pressure. A pulmonologist intubated her and she was given medication to increase her blood pressure. She was also given blood thinners to prevent clotting and to dissolve clots.
Later that day, the plaintiff's blood pressure decreased and her hemoglobin dropped. A CT scan showed that she was bleeding from the puncture wound in the femoral artery used to insert the stents. Dr. Fredrick Knight, a vascular surgeon, was consulted. On November 3, 2000, he evacuated a hematoma and repaired the femoral artery. The plaintiff then developed deep venous thrombosis and acute renal failure. The plaintiff was finally discharged from the hospital on November 28, 2000.
On October 1, 2001, the plaintiff instituted a medical review panel proceeding against Willis-Knighton and Dr. Smith. The review panel was composed of an attorney-chairman and three cardiologists. On April 11, 2006, the medical review panel issued an opinion finding that the evidence did not support the conclusion that the defendants failed to meet the applicable standard of care. The review panel stated that the plaintiff experienced a right coronary artery occlusion post-intervention, which is a known risk. They found that this was treated appropriately by re-intervention. The review panel found that the bleeding and problems experienced by the plaintiff are known risks of the procedure and are more likely to occur in obese patients such as the plaintiff. They also *810 found that the plaintiff had pre-existing peripheral vascular disease which was diagnosed in 1998. This increased her risk for the problems experienced. The panel observed that after her 1998 diagnosis, the plaintiff continued to abuse tobacco and failed to modify her obesity. The panel found that the drop in oxygen levels was caused by sedation used during the procedures and was a known risk.
The medical review panel found that the plaintiff received reasonable care during the adverse events and diligence and best judgment were used to resolve the acute bleeding with the necessary specialty consultations and appropriate surgical repair by the vascular surgical service. The panel noted that the medical literature recognizes that such events can result in prolonged hospitalizations and prolonged recovery, but rarely cause permanent disability. The medical review panel concluded that Dr. Smith provided reasonable care and diligence and that the nurses and employees of Willis-Knighton Bossier timely and appropriately followed all physician orders.
On July 31, 2006, the plaintiff filed the present suit for medical malpractice damages, naming Willis-Knighton and Dr. Smith as defendants. The plaintiff alleged that Dr. Smith recommended a stent, and in performing the procedure, perforated the femoral artery in two spots and failed to recognize that the perforations had occurred. She contends that Dr. Smith also failed to recognize the perforations during the second stent procedure. The plaintiff complains that the damage was not repaired until two days later, that she suffered life-threatening complications, and that she was bedridden for months.
On April 16, 2007, Willis-Knighton filed a motion for summary judgment, arguing that there was no evidence that the hospital violated the appropriate standard of care of a hospital toward the plaintiff. In support of its motion, the hospital attached the medical review panel opinion and the plaintiff's hospital records. Also attached were the affidavits of two of the physician members of the medical review panel stating that, in their expert opinions, neither the hospital nor Dr. Smith deviated from the applicable standard of care.
The next day, April 17, 2007, Dr. Smith filed a motion for summary judgment. He contended that in a medical malpractice case, such as this, the plaintiff could not carry her burden of proof without a medical expert. The plaintiff did not produce any medical expert opinion in this matter. In support of his motion for summary judgment, Dr. Smith attached the medical review panel opinion and his own affidavit outlining the steps taken in caring for the plaintiff. He also included the affidavit of one of the physician members of the medical review panel stating that, in his expert opinion, neither the hospital nor Dr. Smith breached the applicable standard of care in this case.[1] Accordingly, Dr. Smith argued that the trial court should grant summary judgment in his favor.
In her opposition to the motion for summary judgment, the plaintiff contended that there was no need for expert testimony to carry her burden of proof. She asserted that her injury was such that a breach of the applicable standard of care was apparent from the record. She also maintained that, if expert testimony is required to carry her burden of proof, she should be accorded a reasonable amount of time to retain an expert.
*811 On May 29, 2007, a hearing on the motions for summary judgment was held in the trial court. That court stated that the plaintiff failed to present any expert opinion supporting her position and that she cannot prevail in a medical malpractice case without the opinion of a medical expert to establish the standard of care and to show a breach of the standard of care. The trial court granted the motions for summary judgment on behalf of both Dr. Smith and Willis-Knighton. The plaintiff appealed, claiming that the trial court erred in granting the motions for summary judgment and in failing to allow her additional time to secure a medical expert.

SUMMARY JUDGMENT
The plaintiff argues that the trial court erred in granting the motions for summary judgment in favor of Willis-Knighton and Dr. Smith. The plaintiff claims that the defendants failed to produce competent evidence in support of their motions. According to the plaintiff, there are genuine issues of material fact as to whether Dr. Smith and Willis-Knighton breached their standard of care. The plaintiff maintains that Dr. Smith caused extensive internal bleeding which went unnoticed by the doctor and the hospital staff for two days. She also urges that the facts of the present case are such that she was not required to present the opinion of a medical expert to support her claims against the defendants. These arguments are without merit.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by the litigant. Samaha v. Rau, XXXX-XXXX (La.2/26/08), 977 So.2d 880. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. This article was amended in 1996 to provide that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966; Henderson v. Homer Memorial Hospital, 40,585 (La. App. 2d Cir.1/27/06), 920 So.2d 988, writ denied, XXXX-XXXX (La.5/5/06), 927 So.2d 316.
La. C.C.P. art. 966(C)(2) sets forth the burden of proof in summary judgment proceedings. This provision first places the burden of producing evidence for summary judgment on the mover (normally the defendant), who can ordinarily meet the burden by submitting affidavits or by pointing out the lack of factual support for an essential element of the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff), must come forth with evidence (affidavits or discovery responses) which demonstrates that he or she will be able to meet the burden at trial. Henderson v. Homer Memorial Hospital, supra.
Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Henderson v. Homer Memorial Hospital, supra.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Samaha v. Rau, supra.
Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence *812 is so obvious that a layperson can infer negligence without the guidance of expert testimony. Pfiffner v. Correa, XXXX-XXXX XXXX-XXXX, XXXX-XXXX (La.10/17/94), 643 So.2d 1228; Samaha v. Rau, supra. Expert witnesses are particularly necessary where the defendant physician has filed a motion for summary judgment supported with expert opinion evidence that his treatment met the applicable standard of care. Lee v. Wall, 31,468 (La.App. 2d Cir.1/20/99), 726 So.2d 1044.
The motion for summary judgment at issue here arose in the context of a suit for medical malpractice. To establish a claim for medical malpractice, the plaintiff has the burden of proving by a preponderance of the evidence: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within the involved specialty; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. La. R.S. 9:2794. Thus, the plaintiff must establish the standard of care applicable to the charged physician, a violation by the physician of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiff's injuries resulting therefrom. Pfiffner v. Correa, supra.
In response to the plaintiff's action against him, Dr. Smith came forward with evidence to negate the plaintiff's claim that he lacked the degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill. Dr. Smith's motion for summary judgment was supported by the medical review panel opinion and the written reasons for that opinion. He also submitted his own affidavit regarding the care given Ms. Thomas, as well as the affidavit of one of the medical review panel doctors to establish that there was no breach in the standard of care in this case.
Willis-Knighton supported its motion for summary judgment with the medical review panel opinion and affidavits from two physician members of the review panel. Willis-Knighton noted that in the trial court, in opposition to the motions for summary judgment, the plaintiff only addressed claims against Dr. Smith and made no argument at all regarding Willis-Knighton.[2] Willis-Knighton contends that the plaintiff has made no showing that the hospital departed from a reasonable standard of medical care regarding the plaintiff. The hospital cites the medical review panel opinion failing to find any negligence on the part of the defendants. Willis-Knighton asserts that this is sufficient to present a prima facie case that the defendants are not liable for the plaintiff's claimed injuries. The burden of proof then shifts to the plaintiff. According to the hospital, the plaintiff did nothing to show that there is a genuine issue of material *813 fact and that she will be able to satisfy her burden of proof at trial.
In response, the plaintiff did not present any expert medical opinion to show that the applicable standard of care had been breached in this case by either Dr. Smith or Willis-Knighton. The plaintiff argues that an expert medical witness is not necessary in this matter because a layperson could infer negligence from the facts presented at trial. She claims that the facts in this case are similar to situations where a physician fractures a leg during an examination, amputates the wrong arm, drops a knife, scalpel, or acid on a patient, or leaves a sponge in a patient's body. In such cases, the jurisprudence holds that an expert opinion is not necessary to sustain the plaintiff's burden of proof. Ms. Thomas contends that Dr. Smith punctured her femoral artery in one or both heart catheterization procedures, and should have noted the bleeding caused by the punctures and taken corrective action. She cites Fusilier v. Dauterive, XXXX-XXXX (La.7/14/00), 764 So.2d 74, in support of her argument that the fact that the femoral artery was punctured was conclusive proof of Dr. Smith's negligence.
Dr. Smith contended that the puncture in the femoral artery was necessary to perform the heart stent procedure. Dr. Smith and Willis-Knighton submitted the medical review panel opinion and affidavits of all the physician members of the review panel to support their motions for summary judgment. These documents show that there was no breach in the standard of care owed to Ms. Thomas by Willis-Knighton or by Dr. Smith. These affidavits demonstrate that the complications suffered by Ms. Thomas were known risks of the procedures required by her medical condition and did not constitute medical malpractice. This was a sufficient showing to support the motions for summary judgment by the defendants. See Samaha v. Rau, supra.
The facts of this case are distinguishable from those of Fusilier, cited by the plaintiff. In Fusilier, a physician inexperienced in performing laparoscopic surgery punctured the duodenum, aorta, and mesentery of a patient. Then, in attempting to remedy those complications, the doctor punctured the patient's intestine and her splenic capsule. Such punctures should not have occurred in the course of the procedure and demonstrated the physician's breach of the applicable standard of care. In the present case, Dr. Smith has established that the punctures of the femoral artery are a necessary part of the procedure. The showing made by the defendants establish that the harm claimed by Ms. Thomas was not so evident that an expert medical opinion was unnecessary to carry her burden of proof. Ms. Thomas was then required to come forward with expert testimony to support her claim of breach of the applicable standard of care and resulting damages. She did not present the required medical expert opinion and failed to present any support for her claims. Because the plaintiff failed to establish that she could carry her burden of proof at trial, the trial court was correct in granting summary judgment in favor of Dr. Smith and Willis-Knighton.

TIME TO SECURE MEDICAL EXPERT
The plaintiff urges that the trial court abused its discretion in failing to allow her additional time to retain an expert. She claims that she requested an additional 45 days to secure an expert. The plaintiff argues that, at the time of the grant of the motion for summary judgment, the case had been pending in the trial court for less than one year, no trial date had been set, no scheduling order had *814 been issued, and the parties were still actively engaging in discovery. Under these circumstances, the plaintiff contends that the trial court erred in granting summary judgment. This argument is without merit.
Under La. C.C.P. art. 966, a motion for summary judgment is appropriate only after "adequate discovery." It is not an abuse of the trial court's wide discretion in discovery matters to entertain a motion for summary judgment before discovery has been completed. It is within the trial court's discretion to render a summary judgment or require further discovery. Estate of Loveless ex rel. Loveless v. Gay, 41,575 (La.App. 2d Cir.12/13/06), 945 So.2d 233.
This incident occurred November 1, 2000, approximately six and one-half years before the decision on summary judgment. The medical review panel was pending for four and one-half years. The summary judgment in this matter was rendered approximately 10 months after the filing of suit. During all this time, the plaintiff failed to secure a medical expert to provide an opinion in support of her claims. Under these circumstances, the trial court did not err in refusing to grant the plaintiff additional time to find a medical expert and in granting summary judgment in favor of the defendants.

CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting summary judgment in favor of the defendants, Dr. Thomas Smith and Willis-Knighton Medical Center, rejecting the claims of the plaintiff, Anna Thomas. Costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] When combined, the motions for summary judgment by Dr. Smith and Willis-Knighton included the affidavits of all three physician members of the medical review panel. All three doctors found that there was no medical malpractice by the defendants.
[2] In her brief to this court, the plaintiff makes no argument regarding the liability of Willis-Knighton.