LOLLEY, J.
| defendants, Dr. Ravish Patwardhan (“Dr. Patwardhan”) and Louisiana Medical Mutual Insurance Company (“LAMMI-CO”), appeal separate motions for partial summary judgment granted by the First Judicial District Court, Parish of Caddo, State of Louisiana, in favor of plaintiff, Kerry Foster. For the following reasons, we affirm the judgment on the issue of liability and reverse the judgment on the issue of statutory damages.
Facts
On August 5, 2008, Foster came to see Dr. Patwardhan for a neurosurgical evaluation. Prior to being evaluated by Dr. Patwardhan, Foster had undergone a lumbar spine surgery performed by Dr. Jorge Martinez resulting from an on-the-job injury suffered during the summer of 2005. Despite the surgery, Foster’s back pain progressively increased to the extent that his workers’ compensation insurer referred him to Dr. Patwardhan for a subsequent neurosurgical evaluation.
Upon presentation, Foster reported extreme lower back and left lower extremity pain, as well as numbness in the toes of his left foot. Dr. Patwardhan ordered an MRI and referred the patient to pain management for a discogram. The discogram was positive, and Dr. Patwardhan recommended surgery.
On September 19, 2008, Dr. Patwardhan performed a transforaminal lumbar inter-body infusion (“TLIF”) at the L3-L4 level with the placement of pedicle screws and a peek cage. Following surgery, Foster awakened complaining of right lower extremity pain, numbness, and right foot weakness, which Foster claimed was not present prior to surgery. As a result, Dr. Patwardhan ordered an MRI and CT scan, which, in his opinion, ^showed the hardware correctly placed. However, Dr. Pat-wardhan did note that a portion of the cage extended beyond the boundaries of the vertebrae.
During routine postoperative follow-up visits, Foster continuously reported lower back and lower extremity pain, and Dr. Patwardhan continued to order CT scans to evaluate the fusion. At each visit, Dr. Patwardhan believed the placement of the device to be proper, and noted fusion beginning to take place. On January 27, 2009, Foster was advised to increase his activities and was even provided a medical *498 release to return to work. Another CT scan was performed on April 3, 2009, whereby Dr. Patwardhan again stated the results showed signs of fusion. Finally, on June 24, 2009, after continued complaints of pain and numbness, Dr. Patwardhan referred Foster to pain management for further evaluation.
On July 29, 2009, Foster saw Dr. Donald Smith (“Dr. Smith”), who reviewed the radiographic studies and felt there was no convincing evidence of bone formation or bone fusion at the surgical site. Dr. Smith also noted that the hardware was not in a satisfactory condition.
On April 6, 2010, Foster underwent surgery performed by Dr. Pierce Nunley (“Dr. Nunley”) to correct the previous procedure. Dr. Nunley removed the hardware placed by Dr. Patwardhan and in his operative report, noted that “the implant was encountered and was not affixed; however, it was significantly subsided into the vertebral body.”
Despite the corrective surgery, Foster’s back problems lingered. As a result, Foster filed a medical review panel request to investigate the alleged malpractice of Dr. Patwardhan. A unanimous panel opinion was received on December 29, 2011, which was adverse to Dr. Patwardhan. The panel opinion stated that Dr. Patwardhan failed to meet the applicable standard of 1 scare and that his conduct was a factor in the resulting damages suffered by Foster. This included failing to properly follow up with Foster, failing to inform him of the misplacement of the cage, and failing to perform the surgical procedure correctly. Moreover, the panel opinion found that Foster was not an appropriate candidate for the surgery performed by Dr. Patwar-dhan.
After receiving this favorable panel opinion, Foster filed suit for medical malpractice pursuant to the Louisiana Medical Malpractice Act, naming Dr. Patwardhan and LAMMICO as defendants. In his petition for damages, Foster alleged that Dr. Patwardhan breached the appropriate standard of care, and as a result of this breach, he suffered debilitating and permanent pain and suffering, loss of employment, loss of function in the lower extremities, loss of mobility, and loss of flexibility. Foster also alleged that he suffered physical pain and suffering, mental anguish and distress, permanent disability, loss of enjoyment of life, and an increased likelihood of future medical problems.
Foster filed a motion for partial summary judgment on the issue of liability only. In support of this motion, Foster attached the medical review panel opinion along with his affidavit and an affidavit of one of the medical review panel physicians, Dr. Brian Willis (“Dr. Willis”). Both the panel opinion and Dr. Willis’ affidavit stated that Dr. Patwardhan clearly breached the standard of care, and this breach was the proximate cause of the damages suffered by Foster.
Dr. Patwardhan opposed Foster’s motion with affidavits from himself, as treating physician, and Dr. Robert Lieberson, a Board-certified practicing neurosurgeon (“Dr. Lieberson”). In his affidavit, Dr. Patwardhan claimed |4that Foster was an appropriate candidate for the TLIF procedure and that his pre-, intra-, and postoperative care was all appropriate and within the applicable standard of care. Likewise, Dr. Lieberson’s affidavit stated that Dr. Patwardhan did not breach the standard of care and that the surgery performed and the follow-up care was appropriate.
After a hearing on Foster’s motion, the trial court granted summary judgment in his favor, finding that neither Dr. Patwar-dhan’s nor Dr. Lieberson’s affidavit was sufficient to create a genuine issue of ma *499 terial fact. Explaining its reasoning, the trial court noted, “I’ve got a panel opinion that came out against the doctor. I have an affidavit by Dr. Lieberson, which is nothing but a one sentence conclusion. And, I don’t believe that Dr. Patwardhan, due to his circumstances and the problems that he’s had, is competent to issue an affidavit for himself.” Dr. Patwardhan appealed the trial court’s judgment.
With the judgment on liability on appeal, Foster made a separate motion for partial summary judgment on statutory damages, which was granted. Dr. Patwardhan also appealed that judgment. Ultimately, this Court consolidated the two appeals for docketing and opinion purposes.
Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Samaha v. Rau, 2007-1726 (La.02/26/08), 977 So.2d 880; Thomas v. Willis-Knighton Med. Ctr., 43,176 (La.App.2d Cir.04/80/08), 981 So.2d 807, writ denied, 2008-1183 (La.09/19/08), 992 So.2d 932. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A). A motion for summary judgment.shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. C.C.P. art. 966(c). Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967; Samaha, supra.
This provision initially places the burden of producing evidence at the hearing on the motion for summary judgment on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Samaha, supra. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the Rburden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Samaha, supra; Wright v. Louisiana Power & Light, 2006-1181 (La.03/09/07), 951 So.2d 1058.
To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and, (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794(A). *500 Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Samaha, supra; Davis v. Atchison, 37,832 (La.App.2d Cir.10/29/03), 859 So.2d 931.
Discussion
On appeal, Dr. Patwardhan contends that the trial court erred in granting both the motion for partial summary judgment on liability and the motion for partial summary judgment on statutory damages. According to Dr. Patwardhan, the presence of two expert affidavits stating that he did not breach the applicable standard of care clearly creates a genuine issue of material fact as to liability. In regard to statutory damages, Dr. Patwardhan maintains that summary judgment is improper due to the factual dispute of whether Foster suffers from a true right foot drop.

Liability

In response to Foster’s motion for partial summary judgment on liability, Dr. Patwardhan, as the nonmover, was required to produce 17evidence of a material factual dispute. Dr. Patwardhan attached to his opposition two expert affidavits — an affidavit from Dr. Patwardhan himself and an affidavit from Dr. Lieberson. It is Dr. Patwardhan’s position that both of these affidavits are sufficient to contradict Foster’s motion and create a factual dispute as to whether he breached the applicable standard of care. We disagree, and conclude that the trial court was not in error in determining that both affidavits were insufficient summary judgment evidence.

Dr. Patwardhan’s affidavit

As noted above, the trial court held that Dr. Patwardhan lacked the requisite competence under La. R.S. 9:2794(D) to qualify as an expert witness and issue an affidavit regarding the neurosurgical procedures performed on Foster.
It is well established that the trial court has great discretion in determining the competence of an expert witness and that determination will not be overturned on appeal absent an abuse of discretion. Dixon v. Tucker, 47,113 (La.App.2d Cir.05/16/12), 92 So.3d 1100, writ not considered, 2012-1838 (La.11/09/12), 10 So.3d 824. In a medical malpractice claim, the qualification of an expert witness is governed under La. R.S. 9:2794(D)(l)-(5), which provides, in pertinent part:
(1) [A] person may qualify as an expert witness on the issue of whether the physician departed from accepted standards of care only if the person is a physician who meets all of the following criteria:
(a) He is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose.
(b) He has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of lathe illness, injury, or condition involved in the claim.
(c) He is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of care.
(d) He is licensed to practice medicine by the Louisiana State Board of Medical Examiners under La. R.S. 37:1261 et seq., is licensed to practice medicine by any other jurisdiction in the United States, or is a graduate of a medical school accredited by the American Medical Association’s Liaison Committee *501 on Medical Education or the American Osteopathic Association.
(3) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical malpractice relevant to the claim and is actively practicing in that area.
(4) The court shall apply the criteria specified in Paragraphs (1), (2), and (3) of this Subsection in determining whether a person is qualified to offer expert testimony on the issue of whether the physician departed from accepted standards of medical care.
Thus, in deciding whether or not to accept Dr. Patwardhan as an expert, the trial court first had to determine whether he passed all of the criteria set forth under subsections (a), (b), (c), and (d) of La. R.S. 95794(D)(1). In addition, La. R.S. 9:2794(D)(3) provides that in determining qualifications, the court shall consider whether at the time the claim arose, or at the time the testimony is given, the witness is board certified or has other substantial training or experience in an area of medical practice relevant to the claim and is actively practicing in that area.
| aAs evidenced from the trial court’s oral reasons for granting summary judgment, it obviously found that Dr. Patwardhan lacked the requisite knowledge of accepted standards of medical care involved in the claim, as well as the qualifications on the basis of training or experience to offer an expert opinion regarding those accepted standards of care. In coming to this conclusion, the trial court also considered other important items listed under La. R.S. 9:2794(D)(3), such as whether Dr. Patwar-dhan was board certified, whether he has other substantial training or experience in an area of medical practice relevant to the claim, and whether he is actively practicing in neurosurgery. Because the record is clear that none of the considerations set forth in La. R.S. 9:2794(D)(3) weigh in favor of accepting Dr. Patwardhan as an expert in this case — he is not board certified, he does not possess substantial training or experience as evidenced by the interim consent order, a public record, and he is not currently practicing in the area of neurosurgery — we cannot say that the trial court erred in finding Dr. Patwardhan lacked the competence to issue an expert affidavit regarding the neurosurgical procedures performed on Foster. The trial court also placed a tremendous amount of weight on its decision not to accept Dr. Patwardhan as an expert on the fact that the State Board of Medical Examiners has deemed Dr. Patwardhan incompetent to practice neurosurgery. None of these considerations by the trial court were unreasonable or in error. Accordingly, Dr. Pat-wardhan’s argument as to whether he should be qualified as an expert is without merit.

Dr. Lieberson’s affidavit

| inThe trial court also chose not to accept the expert affidavit submitted by Dr. Lieberson. Specifically, the trial court determined that it was conclusory and contained no specific facts to meet the requirements set forth in La. C.C.P. art. 967. We agree.
Louisiana C.C.P. art. 967 provides that supporting and opposing affidavits used on summary judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). The sup *502 porting and opposing affidavits of experts may set forth such experts’ opinions on the facts as would be admissible in evidence under La. C.E. art. 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Id. Additionally, and crucial to the case subjudice, La. C.C.P. art. 967(B) provides that:
[w]hen a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Here, Dr. Lieberson’s affidavit merely states that he read and reviewed Foster’s medical records and imaging, and based on his knowledge, training, and experience, he believed the surgery performed and the follow-up care provided by Dr. Patwar-dhan was appropriate. Moreover, Dr. Lie-berson stated that Dr. Patwardhan did not breach the standard of care when operating on Foster. The affidavit does not recite any factual background of the case, the applicable standard of care, nor does it provide any reasoning on how Dr. Lieber-son came to the conclusion that the surgical procedure |„performed on Foster was appropriate. As a result, and guided La. C.C.P. art. 967, we conclude that the affidavit issued by Dr. Lieberson fails as proper summary judgment evidence, and that the trial court properly deemed it insufficient.

Dr. Lieberson’s expert report

In connection with Dr. Lieberson’s affidavit, Dr. Patwardhan attempted to supplement the record with an unsworn and unverified expert report allegedly compiled by Dr. Lieberson. Initially, the trial court disallowed this report and noted that Dr. Patwardhan was unable to supplement the record on summary judgment. The trial court further recognized that the expert report was unsworn and unverified, and accordingly, it did not meet the proper requirements of summary judgment evidence. However, at a subsequent hearing, over an objection by Foster, the trial court mistakenly allowed the expert report into evidence. Foster immediately filed a motion for rehearing to strike the expert report from the record. At the rehearing, the trial court noted its mistake, struck the expert report from the record, and accepted it as a proffer only.
Louisiana jurisprudence is clear that unsworn or unverified documents are not self-proving and will not be considered on summary judgment. Harris v. Dunn, 45,619 (La.App.2d Cir.09/22/10), 48 So.3d 367, writ denied, 2012-2234 (La.11/30/12), 103 So.3d 372. A document that is not an affidavit, or is not certified and not attached to an affidavit, is not of sufficient evidentiary quality to be given weight in determining whether there remains a genuine issue of material fact. Boland v. West Feliciana Parish Police Jury, 2003-1297 (La.App.1st Cir.06/25/04), 878 So.2d 808, writ denied, 2004-2286 (La.11/24/04), 888 So.2d 231.
112Here, the unsworn, unverified expert report of Dr. Lieberson offered by Dr. Patwardhan met none of the requirements for consideration as competent summary judgment evidence. Accordingly, Dr. Pat-wardhan’s argument that the trial court erred in failing to admit the expert report of Dr. Lieberson is also without merit.

Statutory Damages

According to Dr. Patwardhan, the trial court erred in granting summary judgment on the issue of statutory damages due to the existence of genuine issues *503 of material fact regarding the extent of Foster’s injury. Specifically, Dr. Patwar-dhan contends that a genuine issue of material fact exists as to whether or not Foster truly suffers from a right foot drop, which would warrant the award of $100,000.00, the statutory cap for a qualified healthcare provider. This argument has merit.
The amount of damages to be awarded in any given case is a question of fact. However, summary judgment may be rendered on the issue of damages if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. Bijou v. Alton Ochsner Med. Found., 95-3074 (La.09/05/96), 679 So.2d 893; Miller v.Willis-Knighton Bossier, 41,476 (La.App.2d Cir.09/20/06), 940 So.2d 54.
Pursuant to La. R.S. 40:1299.42(B), Dr. Patwardhan is only liable personally for damages up to $100,000.00. Here, the trial court determined that, considering Foster’s injury, the $100,000.00 cap against Dr. Patwardhan would be met, and summary judgment was granted in Foster’s favor. Thus, in order to meet the statutory limit, and to be granted summary | ^judgment, Foster was required to prove that no factual dispute exists as to whether he suffered damages exceeding the statutory limit of $100,000.00. Because it is undisputed that the economic damages alone do not meet the statutory limit of $100,000.00, Foster must prove that no material facts exist as to whether he suffers from a true right foot drop. In support of his motion, Foster attached his affidavit as well as a physician report from Dr. David Adams (“Dr. Adams”). Foster’s affidavit states, among other things, that he currently suffers pain and numbness in the right foot, which did not exist before the surgery. Moreover, Foster claims that his right foot slaps the ground when he walks, which he contends is evidence of a right foot drop. Dr. Adams’ physician report provides that he performed an EMG on Foster in January, 2013, to evaluate Foster’s recovery. In his report, Dr. Adams, although not using the exact terminology, was of the opinion that Foster suffers from a right foot drop. However, Dr. Adams also made a notation that seems to suggest that Foster does not suffer from a right foot drop.
Dr. Patwardhan opposed this motion with another affidavit from himself and physician reports from Dr. Nunley and other neurosurgeons from the Louisiana Spine Institute. The affidavit submitted by Dr. Patwardhan states that when Foster left Dr. Patwardhan’s office following his medical care, he had no right foot drop. Dr. Patwardhan also stated that he personally witnessed Foster exercising and walking with no assistance device during a rehabilitation session. Notably, we recognize that our reliance on Dr. Patwardhan’s affidavit in the context of statutory damages might call into question our decision to exclude Dr. Patwardhan as an expert witness on the issue of liability. However, unlike Dr. Patwardhan’s position regarding his liability, he is not giving an expert opinion as to whether |14Foster suffers from a right foot drop. Instead, he is only testifying as to factual matters, which we find to be proper.
The physician report from Dr. Nunley’s postoperative follow-up visit noted a 5 out of 5 strength in the right lower extremity, i.e., Foster’s strength in his right foot was good. Additionally, in a subsequent follow-up visit at the Louisiana Spine Institute, one of the physicians noted a 5 out of 5 motor function in the right extremity, which further evidences that Foster is able *504 to use his right foot and has not lost significant motor function.
Because there is clearly a factual dispute as to whether Foster truly suffers from a right foot drop, summary judgment on statutory damages is improper. We conclude that this issue should be considered by the factfinder.
Conclusion
Based on the foregoing, we conclude that the trial court properly granted Kerry Foster’s motion for partial summary judgment on the issue of liability. However, we reverse the partial summary judgment in favor of Kerry Foster on statutory damages due to the existence of genuine issues of material facts. All costs of this appeal are assessed to the parties equally.
AFFIRMED IN PART; REVERSED IN PART.
BROWN, C.J., dissents with written reasons.