PITMAN, J.
_JjPlaintiffs-Appellants Steve and Tracy Ambrose (“the Ambroses”)[1] appeal the trial court’s ruling that Defendant-Appellee Automobile Club Inter-Insurance Exchange (“ACIIE”)[2] had not acted in bad faith. ACIIE appeals the trial court’s ruling that equitable estoppel applies in this case. Both parties- appeal the trial court’s allocation of court costs. For the following reasons, we affirm.

FACTS

On the morning of September 30, 2011, Mrs. Ambrose was involved in an automobile accident while operating a 2007 Nissan Frontier. As a result of the acfeident, Mrs. Ambrose’s vehicle sustained damage.
On September 21, 2012, the Ambroses filed an original petition for damages and bad faith. They alleged that ACIIE is liable to compensate them for their injuries, damages, penalties and attorney fees. The Ambroses stated that they were insured by ACIIE with continuous and uninterrupted coverage from 2006 -through September- 30, 2011. They noted that their policy listed as an insured vehicle a 2007 Nissan Frontier owned by them and included physical damage (comprehensive and collision) coverage. The Ambroses stated that the Nissan sustained $5,463.86 in damage as a result of the September 30, 2011 accident, but ACIIE denied their claim to repair the damage on the basis that their policy was cancelled prior to the accident. The Ambroses admitted that, on several instances, they were late paying their insurance premiums, but noted that ACIIE regularly and consistently |2accepted their late payments. They explained that a' premium payment was due on September 30, 2011 (the day of the accident) and that they sent their payment via overnight mail on October 3, 2011, but ACIIE declined to accept -the payment. They contended they were reasonable and justified in believing that the late payment would not jeopardize their coverage because ACIIE had established a habit and/or custom of accepting overdue or late payments.’ The Ambroses alleged that, as a result of ACIIE’s denial of their claim, they sustained damages, i.e., $5,463.86 for property damage repair, loss of use of the Nissan, a fine of $150 from the State of Louisiana for not having insured vehicles, problems obtaining new insurance and higher premiums, inconvenience and mental anguish, attorney fees and court costs. The Ambroses further alleged.that ACIIE acted'in bad faith and was arbitrary, capricious and without probable cause in direct violation of La. R.S. 22:1892 and/or La. R.S. 22:1973 and is, therefore, liable for damages, penalties and attorney fees.
On October 25, 2012, ACIIE filed an answer alleging that the lapse in coverage for the September 30, 2011 accident was caused by the fault and negligence of the Ambroses, which bars recovery by them. ACIIE explained that the Ambroses failed to timely pay all premiums due under the terms of the policy, failed to adhere to the terms for premium payments as set forth *1254 in the policy and failed to be responsible insureds for maintaining the payments due for continuous and uninterrupted coverage of their policy. ACIIE noted that, prior to the lapse that occurred on September 30, 2011, some of the Ambroses’ payments had been made during the “grace period,” but were 13made prior to the date and time of cancellation provided on the renewal notice, so the policy never previously lapsed. ACIIE alleged that the failure to make a payment by September 30, 2011, at 12:01 a.m. resulted in the lapse and cancellation of their policy.
A bench trial was held on March 11, 2014.
Kris Wallis, a policy services manager for ACIIE, testified that, prior to May 2011, ACIIE had in place a 12- to 17-day[3] grace period, i.e., an extension-to-pay period, for insureds to pay their premiums after the due date. She stated that the due date would be stated in the renewal package that was mailed to the insured; and, if a payment was not received, ACIIE would mail a notice of cancellation. The notice provided an additional 12 days for payment; and, if the premium was not paid within those additional 12 days, the policy would be cancelled with the cancellation date retroactive to the original due date. Ms. Wallis further testified that this policy was in place when the Ambroses bought their policy on March 30, 2006, but that, in May 2011, the grace period for policy renewals was abolished in order to comply with a state requirement that insurers report cancelled or expired policies within 15 days. She stated that, from when the Ambroses purchased the policy in March 2006 to when it was cancelled on September 30, 2011, there were no lapses in coverage or cancellations of the policy. She noted that there were several instances when the Ambroses paid after the due date, but within the grace period. Ms. Wallis also testified that the Ambroses’ policy and renewals were six-month contracts to be renewed |4on March 30 and September 30 of every year and that the policy renewal documents sent to them for the September 2011 renewal included the following language:
Payment — to continue insurance under this policy, your payment is due and payable on or before the due date. Payment is considered as having been made upon receipt at company’s home office and not at time of mailing. Failure to make your payment by the date due shall constitute your request to terminate the insurance. Please allow at least five days when mailing your payment.
She stated that this meant that the Am-broses could pay the premium up until 12:01 a.m. on the due date.[4] Ms. Wallis also testified as to the Ambroses’ “policy jacket,” i.e., the terms and conditions of the contract. She read from- the September 2011 jacket:
Declarations — The policy period is shown under “Policy Period” and for such succeeding period of six months thereafter as the requested renewal premium is paid by you. The policy period will begin and end at 12:01 a.m. Standard time at your address stated in the declarations. The premium shown is for the policy period and coverages indicated in the declarations.
She noted that ACIIE did notify the Am-broses of the changes to the policy to be renewed in September 2011, in that the renewal notice included a new policy book *1255 let and cover letter that used both highlighted and bolded material to call attention to the changes to the policy. She quoted two new sentences from the September 2011 policy booklet that stated: “Failure to pay the required renewal premium when due will mean that you have not accepted our renewal offer. You will no longer have auto insurance with |Kus.” She also read a portion of the policy jacket that had not changed since 2006 that stated:
Automatic termination. If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.
She noted that none of ACIIE’s documentation had ever mentioned anything about a grace period or an extended-payment period. Ms. Wallis also testified regarding the revised payment notice that was issued to the Ambroses on September 7, 2011. She showed that the document stated on the front of the page that the due date is September 30, 2011, and that the back of the page stated: ‘Your payment is due and payable on or before the due date.... This policy will expire as of 12:01 a.m. on 9-30-11 unless the amount due indicated above is received on or before that date and time.” She stated that a payment can be made on the due date if an agent asks the insured if there have been any tickets or accidents and the insured answers in the negative. Ms. Wallis noted that the September 2011 renewal notice contained the following sentence that was not included on previous renewal notices: “No further notice will be sent for this payment notice.” She testified that the Ambroses - attempted to mail ACIIE a payment on October 5, 2011, and that ACIIE returned this payment. She also noted that the Ambroses attempted to pay an agent, but that the agent would not accept payment because there had been an accident. She testified that a lapse notice was issued by ACIIE to the Ambroses on October 3, 2011 and that ACIIE was not in the habit of accepting payments beyond the lapse date on renewal [ ^offers. She stated that, after the lapse, the Ambroses could have applied to be new insureds, but they would have to report the accident, which would affect their rates.
Mrs. Ambrose testified that she was involved in an automobile accident on September 30, 2011, at approximately 10:00 a.m. while driving her 2007 Nissan Frontier. Her vehicle was too damaged to drive home, so Mr. Ambrose towed it to his body shop. She stated that it took seven months to repair the vehicle and that she paid for the parts and repairs. She testified that she had been insured by ACIIE since 2006 and that the policy renewed every six months on March 30 and September 30. She stated that she generally mailed in her premium payments, but would take the payments to the local agent’s office if they were late. She further stated that, prior to September 30, 2011, her policy had never been cancelled and had never lapsed. She assumed she had a grace period to pay because she had previously made late payments several times without consequence. She admitted that, when she received the September 2011 renewal package from ACIIE, she did not read it in its entirety until the day of the accident because she had been out of town. She testified that, after the accident, she called ACIIE and, when asked whether she had paid the premium, she explained that she found the bill when she returned home and let ACIIE know that it had not been paid. ACIIE then told her that she could not come in and pay the bill. She stated that, on October 4, she mailed a *1256 payment to ACIIE, but the payment’ was returned because ACIIE said she did not have insurance. She testified that, as a result of not having insurance, she, her husband and |7her daughter were fined, it took a long while to obtain insurance again and premium estimates for new policies were much higher than she had been paying for coverage with ACIIE.
Mr. Ambrose[5] testified that he owns a body shop and prepared an estimate of the repairs for the 2007 Nissan Frontier owned by him and his wife using the Mitchell Estimating Guide for his calculations. He also stated that Mrs. Ambrose purchased the parts needed and he made the repairs to the vehicle.
On April 24, 2014, the trial court filed a ruling. It analyzed the equitable estoppel argument and applied a two-prong test: (1) there must be a habit or custom of acceptance of overdue premiums and (2) the insured must reasonably believe that by reason of this custom the insurer will maintain the policy in effect without prompt payment of the premiums. Ledent v. Guaranty Nat. Ins. Co., 31,346 (La.App. 2d Cir. 12/28/98), 723 So.2d 531. The trial court determined that ACIIE was in the habit of accepting late payments and that Mrs. Ambrose was reasonable in believing that a late payment would be accepted. Accordingly, the trial court found that equitable estoppel does apply, that Mrs. Am-brose had insurance coverage with ACIIE at the time of the accident on September 30, 2011, and, therefore, that ACIIE is liable for property damage in the amount of $5,463.86. The trial court also analyzed the bad faith argument and determined that the Ambroses did not show that ACI-IE acted in bad faith or in an arbitrary or capricious manner or without probable cause and, | ^therefore, are not entitled to any bad-faith damages. It further ordered that court costs be assessed equally between the parties.
The Ambroses appeal, and ACIIE answers the appeal.

DISCUSSION

Bad Faith

The Ambroses argue that the trial court erred in not finding ACIIE to be in bad faith for its denial of coverage and refusal to pay their property damage claim. They contend that the denial of their claim was arbitrary and capricious based on the retroactive application of the grace period. They also contend that ACIIE unilaterally abolished the grace period without notifying them, which was deliberate, arbitrary and capricious and was a breach of contract. The Ambroses further argue that ACIIE’s current grace period policy, i.e., that late payments will be accepted if the insured has not had an accident or a ticket, is per se bad faith. They contend that they are entitled to penalties and attorney fees pursuant to La. R.S. 22:1892 and 1973 because ACIIE misrepresented facts and policy provisions.
ACIIE argues that the trial court was correct in determining that bad faith penalties, damages and attorney fees would not apply or be assessed against it, as the Ambroses failed to prove bad faith at trial. ACIIE contends that it cannot be held liable for any damages as a result of the Ambroses’ failure to comply with the requirements of the policy. It also argues that it was not in bad faith for refusing to accept the Ambroses’ late payment to reinstate the policy and make payments on the *1257 accident claim because, when the policy lapsed, there was no longer an insurer— insured relationship that |3triggered the application of La. R.S. 22:1892 and 1973 at the time of the accident. ACHE contends that it was not in bad faith because the changes it made to the policy were mandated by changes in Louisiana law and because it provided notice of those policy changes to the Ambroses. AGUE further contends that the decision not to accept a payment made after the date and time listed on the renewal notice was not arbitrary and capricious, but, rather, was- a requirement in compliance with the policy language. It alleges that the Ambroses’ failure to pay timely, which resulted in the policy lapse, is clearly a gbod-faith defense, which precludes any award for bad faith damages and penalties.
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it. is clearly wrong. Brown v. Allstate Ins. Co,, 37,151 (La.App. 2d Cir. 5/14/03), 847 So.2d 70. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
La. R.S. 22:1973 states, in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be hable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer’s duties imposed in Subsection A of this Section:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
[[Image here]]
| m(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause. (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.
C.In addition to any general or special damages to which a claimant is entitled for breach of' the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is- greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of ■ setting rates or making rate filings.
In the case sub judice, the trial court concluded that the Ambroses failed to meet their burden of proof to show that ACHE acted in bad faith-or in an arbitrary and capricious manner or without probable cause. It noted that ACHE acted reasonably when abolishing the grace period in order to prepare for changes in the law requiring insurers to report can-celled or expired policies within 15 days. It also pointed out that, even without the changes to state law, ACIIE had the right to terminate the grace period at any time. The trial court further found that ACIIE’s insufficient notice of policy changes was not proof of bad faith, explaining that ACI-IE believed, in good faith, that it sufficiently notified the Ambroses that it would *1258 not continue coverage if the renewal payment was late. It determined that ACIIE merely denied and litigated a claim that the company honestly believed was invalid and that these actions do not constitute bad faith. We find that the trial court’s determination is not manifestly erroneous or clearly wrong. ACIIE’s actions were not arbitrary or capricious, without probable cause or in bad |nfaith. It acted according to the provisions set forth in the renewal policy that was mailed to the Am-broses in September 2011.
Accordingly, this assignment of error lacks merit.

Equitable Estoppel

ACIIE argues that the trial court erred in applying the doctrine of equitable estoppel or detrimental reliance and finding that ACIIE owed property damages in the amount of $5,468.89 to the Ambroses. It contends that equitable estoppel is not favored under Louisiana law and is a doctrine of last resort. It alleges that there was no established habit of accepting late payments that would evoke equitable es-toppel, noting that the Ambroses had never made a payment beyond the termination date; and, thus, the reliance on the doctrine of equitable estoppel due to a pattern of behavior is misplaced.
Louisiana jurisprudence has applied the doctrine of equitable estoppel to situations where an insurer’s custom of accepting overdue premiums reasonably led the insured to believe that his or her policy would remain in effect even though the premiums were not paid when due. Ledent v. Guaranty Nat. Ins. Co., supra. In such a case, the following criteria apply: (1) there must be a habit or custom of accepting overdue premiums; and (2) the insured must reasonably believe that by reason of this custom the insurer will maintain the policy in effect without prompt payment of the premiums. Id.
In the case sub judice, the trial court applied the above criteria and determined that the doctrine of equitable estoppel applies to the facts of this case. As to the first prong, the trial court found that ACI-IE was in the habit 112of accepting overdue payments. It noted that ACIIE repeatedly accepted payments by the Ambroses that were paid up to ten days after the renewal notice due date and did not cancel their policy. As to the second prong, the trial court found that the Ambroses were reasonable to rely on the past habit of accepting late payments. It explained that, even though the policy language changed in the September 2011 policy, the Ambroses could reasonably believe that ACIIE would still- accept their late payments. The trial court noted that ACIIE’s custom of accepting late payments contradicted formal language in previous policies, so the Ambroses were reasonable in their belief that the informal policy of accepting late payments still existed despite new policy language. We find that the trial court’s determination that equitable estop-pel applies is not manifestly erroneous. The evidence presented at trial demonstrates that ACIIE’s custom of accepting overdue payments reasonably led the Am-broses to believe that their policy would remain in effect even though their payments were not paid timely.
Accordingly, this assignment of error lacks merit.
Court Costs
Both parties argue that the trial court abused its discretion in assessing them with 50 percent of the court costs. The Ambroses note that court costs totaled over $6,000, notably due to the voluminous documents required to establish a pattern by ACIIE of accepting late payments and to travel costs to depose ACIIE representatives in St. Louis, Missouri, re *1259 garding the grace period. They contend that, although they did not receive the complete relief | isthey sought at trial, they were required to go to trial due to ACI-IE’s failure to pay the claim. ACIIE argues that the Ambroses are not entitled to any award because ACIIE was not in bad faith and the application of equitable es-toppel should be reversed. Therefore, it contends that the trial court’s ruling regarding the assessment of half of the total court costs against ACIIE must be reversed.
La. C.C.P. art. 1920 states:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
A trial court’s assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. Maynor v. Vosburg, 25,922 (La.App. 2d Cir. 11/28/94), 648 So.2d 411, writ denied, 95-0409 (La.4/28/95), 658 So.2d 590.
We do not End that the trial court abused its discretion in this case by assessing each party with 50 percent of the court costs. The judgment of the trial court partially favored each party. The Am-broses succeeded in their argument that equitable estopped applied; and, therefore, ACIIE .was hable for property damages. The Ambroses were not successful in their argument that ACIIE was in bad faith and, thus, were not entitled to bad-faith damages. Accordingly, this assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court finding that Defendant-Appellee Automobile Club Inter-Insurance Exchange |14did not act in bad faith and that equitable estoppel applies in this case. Costs of appeal are assessed 50 percent to Plaintiff-Appellants Steve Ambrose and Tracy Ambrose and 50 percent to Defendant-Appellee Automobile Club Inter-Insurance Exchange.
AFFIRMED.

. The Ambroses are husband and wife.

. ACIIE is a foreign insurance company authorized to do business in the State of Louisiana. During trial, ACIIE was referred to as “AAA.”

. She stated that the range in days was attributable to mail time, holidays and/or weekends.

. She stated that 12:01 a.m. is industry standard.

. The parties stipulated that Mr. Ambrose is an expert in automobile property damage repair.