**PATTERSON FUNERAL HOMES, LLC, Plaintiff-Appellant**

v.

**CATLIN SPECIALTY INSURANCE COMPANY, Capital Premium Financing, Inc. and Bayou Classic Insurance Services, Inc. and Equity Partner Insurance Services, Inc., Defendants-Appellees**

No. 50,831-CA

Court of Appeal of Louisiana, Second Circuit.

Judgment rendered September 28, 2016.

Rehearing Denied 11/10/2016

ERNEST H. GILLIAM, III, Counsel for Appellant

RICHARD E. KING, JENNIFER L. SIMMONS, Counsel for Appellees

Before BROWN, MOORE and LOLLEY, JJ.

LOLLEY, J.

This appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana, wherein the trial court granted summary judgment in favor of defendant, Catlin Specialty Insurance Company. Plaintiff, Patterson Funeral Homes, LLC, now appeals. For the following reasons, we reverse the trial court's judgment and remand for further proceedings.

FACTS

On August 15, 2012, around 5:30 a.m., the Patterson Funeral Homes building, located at 1220 N. Herndon Avenue in Shreveport, Louisiana, was destroyed in a fire. Brandon Patterson, individually and as owner of Patterson Funeral Homes, LLC (collectively "Patterson"), filed a claim for the damages with alleged insurer Catlin Specialty Insurance Company ("Catlin"). Catlin denied coverage on the

basis that policy coverage had been terminated on July 16, 2012, due to default on the premium finance agreement.

Five months prior to the fire, Patterson purchased an insurance policy through a retail agent, Bayou Classic Insurance Services, Inc. ("Bayou Classic") from a foreign insurer, Catlin. The Catlin policy was issued through its Louisiana licensed broker and general agent, Equity Partners Insurance Services, Inc. ("Equity Partners").

The policy was for a 12-month term and insured the funeral home building for $1,200,000.00 and its contents for $300,000.00. The policy premium totaled $9,544.50 annually. Patterson made a down payment of $2,811.13 on the total premium and financed the remaining amount through Capital Premium Financing, Inc. ("Capital"). Patterson signed a premium finance agreement with Capital, which was also signed by Lynda Ramirez, retail agent for Bayou Classic. The first payment was due in April 2012, and from the start, Patterson habitually did not pay the premium payments on time, which eventually caused Capital to contact Equity Partners to cancel the policy.[1] Patterson eventually paid his late premiums before the fire, but when Patterson made a claim after the fire, Catlin denied coverage stating the policy was canceled.

On November 21, 2012, Patterson filed suit against Catlin, Capital, Bayou Classic, and Equity Partners regarding the loss of the property due to fire and the denial of his insurance claim.[2] Capital filed a motion for summary judgment, which was denied, and a year later filed a second motion for summary judgment. Bayou Classic and Catlin also filed motions for summary judgment. A hearing was held on the motions, at which Bayou Classic and Capital were dismissed with prejudice by joint motion with Patterson. Catlin adopted the arguments and evidence contained in the Bayou Classic and Capital motions for summary judgment. After the hearing, the trial court granted summary judgment in favor of Catlin. Patterson now appeals.

## DISCUSSION

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Samaha v. Rau*, 2007–1726 (La. 2/26/08), 977 So.2d 880; *Thomas v. Willis–Knighton Med. Ctr.*, 43,176 (La.App. 2 Cir. 4/30/08), 981 So.2d 807, *writ denied*, 2008–1183 (La. 9/19/08), 992 So.2d 932. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A). A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Jackson v. City of New Orleans*, 2012–2742 (La. 1/28/14), 144

---

1. From this record, it appears that Patterson communicated only with Bayou Classic and its employees, specifically his retail agent, Lynda Ramirez, for all policy matters. In turn, Bayou Classic communicated with Capital to facilitate the premium finance agreement. Based on depositions and documents in this record, Bayou Classic also communicated with Equity Partners. Capital's records show it contacted Equity Partners regarding policy cancellations and updates on Patterson's premium finance payments.

2. The record does not reflect that Equity Partners ever answered the petition, but Patterson has not sought a default judgment.

So.3d 876. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*

On summary judgment, the burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C. art. 966(C)(2); *Samaha v. Rau, supra*; *Lawrence v. Sanders*, 49,966 (La. App. 2d Cir. 06/24/15), 169 So. 3d 790, *writ denied*, 2015–1450 (La. 10/23/15), 179 So.3d 601. An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. La. C.C. art. 967; *Samaha v. Rau, supra*; *Lewis v. Coleman*, 48,173 (La.App. 2 Cir. 6/26/13), 118 So.3d 492, *writ denied*, 2013–1993 (La. 11/15/13), 125 So.3d 1108.

■ In Patterson's first assignment of error, he argues that the trial court erred in granting Catlin's motion for summary judgment, claiming that material issues of fact exist concerning whether or not the parties entered into an agreement to reinstate the insurance policy before the fire occurred. He contends that Equity Partners, as general managing agent of Catlin,

extended an offer to reinstate the policy by asking Bayou Classic to have Patterson sign certain forms in order to reinstate the policy. He further argues the policy document is silent as to the procedure for reinstatement, and also, because the policy was previously cancelled and reinstated in May for nonpayment, he believed that the cancellation on July 16, 2012, would be no different. Specifically, Patterson argues the earlier May cancellation and reinstatement led him to believe that a payment to rectify his account would instantly ensure coverage from that moment, which is a material issue of fact in this case. We agree.

Catlin argues the May cancellation never happened and even if it did, it has no bearing on this matter. Catlin relies on La. R.S. 9:3550(G)(3)(c), claiming that because Capital followed the statutory procedure to cancel Patterson's insurance policy for nonpayment, Catlin can rely on the notice of cancellation to avoid liability for Patterson's claim. We disagree, because, although cancellation is an issue in this matter, reinstatement of the policy is the relevant issue of material fact.

Louisiana R.S. 9:3550(G)(3)(c) states in pertinent part:

> The receipt of such notice of cancellation and statement by the insurer shall create a conclusive presumption that the facts stated in said notice and statement are correct, that the insurer is entitled to rely on such facts and that the cancellation of the insurance contract or contracts is concurred in and authorized by the insured. No liability of any nature whatsoever ... shall be imposed upon the insurer as a result of any misstatement of fact contained in said notice of cancellation or statement furnished by the insurance premium finance company to the insurer, or as a result of failure by the insured ... to receive the notice

of cancellation required by Paragraph (2) of this Subsection, or as a result of failure of the insurance premium finance company to comply with any of the requirements of this Subsection.

Catlin, as insurer, is entitled to rely on the facts contained in the notice of cancellation, dated July 16, 2012, and furnished by Capital, the insurance premium finance company. The statute states Catlin will not be held liable if facts contained in the notice of cancellation are later found to be incorrect. There is no question about the factual correctness of the July notice of cancellation, but at issue is whether Patterson's policy was reinstated *after* that cancellation. Therefore, Catlin's argument, on which the trial court based its judgment, is misplaced.

It is undisputed that Capital followed the statutory procedure in canceling Patterson's policy effective July 16, 2012. However, the relevant question in this instance is not whether the policy was properly canceled, but whether the policy was reinstated or if Patterson was given reason to believe the policy was in effect at the time of the fire. Catlin supplied no evidence[6] to show a lack of factual support for Patterson's argument; therefore, summary judgment was inappropriate.

At issue here are four late payments and the two cancellations that may or may not have validly resulted. In its brief and at oral argument, Catlin repeatedly denied that Patterson's insurance policy had ever been previously canceled and then reinstated before the July notice of cancellation. Exhibits supplied by Capital in its motion for summary judgment (and adopted by Catlin) prove otherwise, specifically Capital's account notes and payment history log for Patterson's account.

Patterson acquired the insurance policy in question and obtained financing for the premium on March 20, 2012. According to Ramirez's deposition, the payment arrangement was such that Patterson paid Bayou Classic and then, Bayou Classic paid Capital, on Patterson's behalf, through Capital's online system. The premium finance agreement included a power of attorney clause which allowed Capital to cancel the policy in accordance with Louisiana law should Patterson default on any premium payments.

The payment schedule required Patterson to pay $821.71 a month, with the first premium installment due April 20, 2012 ("payment one"). The Capital account notes show that payment one was not timely made. On April 30, a late fee was assessed, and on May 14, a cancellation fee was assessed regarding payment one. Capital's account notes state that Darleen, an employee of Equity Partners, called Capital several times over the next week to verify payment status on Patterson's account.

The second installment was due May 20, 2012 ("payment two"). The account notes show that payment two was not timely made. On May 30,[7] another late payment fee was assessed to Patterson's account regarding payment two. At this point in time, both payments one and two were due.

On June 4th, approximately 20 days after the cancellation fee associated with payment one was added to Patterson's account, Darleen called Capital to state that Equity Partners "was going to process cancellation of the policy" ("the May cancellation"). Two days later, on June 6, Bayou Classic accessed the Capital online system and transferred $1,734.51 into Patterson's account with Capital. That same day, immediately after payments one and two were credited, Capital's notes state that request for reinstatement was initiated and sent ("the May request for reinstatement").

Although it appears the May request for reinstatement was made on June 6th, there is no note confirming reinstatement of coverage for the May cancellation. The record is void of any other documentary evidence of the May cancellation, beyond what is contained in Capital's account notes and payment history for Patterson's account. It is unclear if the policy was canceled and reinstated, or if it was never canceled because payment was made on June 6th. Notably, however, Capital's records state a "request for reinstatement" was sent after this May cancellation.[3]

The third premium installment was due June 20, 2012 ("payment three"). Capital's account notes show that payment three was not timely made. On July 2nd, a late fee was assessed for failure to make payment three, followed by the second cancellation fee on July 16 ("the July cancellation"). Catlin claims this July cancellation is the only time Patterson's policy was ever canceled.

Once again, as with the May cancellation, it is noted that Darleen, the Equity Partners representative, called Capital to verify Patterson's payment status. Capital's account notes evidence that on July 27, Darleen stated "cancellation is being processed," approximately 11 days after the July cancellation fee was assessed to Patterson's account.

The fourth premium installment was due July 20, 2012 ("payment four"). Capital's account notes show that payment four was not timely made, and on July 30, a late fee was assessed for failure to make payment four. At this point in time, both payments three and four were due.

On August 13, Bayou Classic accessed the Capital online system and transferred $1,816.69 into Patterson's account with Capital. This transfer covered payments three and four, along with the associated fees. Payment five was not due until August 20. After these payments were credited, Capital's account notes evidence that Patterson's account status was manually changed from "cancel" to "open." Further, the notes show another "request for reinstatement" was sent on August 13 ("the July request for reinstatement"), two days before the fire.

The May and July cancellations appear very similar according to Capital's notes. The difference with the July cancellation is that, according to the deposition testimony of both Patterson and Ramirez, on August 13, 2012, Patterson was asked to sign two forms in order to have his policy reinstated. Ramirez stated in her deposition that this information came from Gina Lee, an employee of Equity Partners. These two documents, a statement of no loss during the period of cancellation and an authorization for electronic withdrawal of monthly payments, were signed by Patterson and returned to Bayou Classic at 3:07 p.m. on Tuesday, August 14, 2012 (approximately 14 hours before the fire that destroyed Patterson's building).[4]

◼ Louisiana jurisprudence has applied the doctrine of equitable estoppel to situations where an insurer's custom of accepting overdue premiums reasonably led the insured to believe that his or her policy would remain in effect even though the premiums were not paid when due.

---

**3.** Although Capital's notes state the May "request for reinstatement" was sent after the May cancellation, this document is not contained in the record. Presumably, this request would have been sent to Catlin, Patterson, Bayou Classic, and Equity Partners, as was the later referenced July request for reinstatement sent on August 13, 2012.

**4.** Forms attached as exhibits to the Bayou Classic motion for summary judgment filed December 29, 2014.

*Ledent v. Guaranty Nat. Ins. Co.*, 31,346 (La.App. 2 Cir. 12/28/98), 723 So.2d 531. In such a case, the following criteria apply: (1) there must be a habit or custom of accepting overdue premiums; and, (2) the insured must reasonably believe that by reason of this custom the insurer will maintain the policy in effect without prompt payment of the premiums. *Ambrose v. Auto. Club Inter–Ins. Exchange*, 49,994 (La.App. 2 Cir. 8/12/15), 174 So.3d 1252, 1258, *writ denied*, 2015–1667 (La. 10/30/15), 180 So.3d 303.

On August 13, 2012, after Patterson made payments three and four, a request for reinstatement was sent by Capital to Patterson, Bayou Classic, Equity Partners, and Catlin. This request for reinstatement included a note to the insured (Patterson), which stated, "The policy referenced above is canceled and is not in force until the insurance company notifies you of that fact." Catlin relies on this notice, and argues that it did not "send" anything to Patterson notifying him that the policy was reinstated.

Patterson argues that Equity Partners, as an agent of Catlin, reinstated the policy when it requested he sign the two aforementioned forms as a condition of reinstatement. Patterson further argues he believed that reinstatement occurred the moment he returned the forms signed, specifically considering the statement of no loss referenced the time period from the date of the July cancellation to the date of Patterson's signature. Patterson signed the statement of no loss and returned it to Bayou Classic at 3:07 p.m. on Tuesday, August 14, 2012. The next day, on Wednesday, August 15, 2012, around 5:30 a.m., Patterson's building was destroyed by fire. If the insurance policy was not reinstated when Patterson signed the statement of no loss, then there was no purpose in having him sign that form in the first place. Pat-

terson's belief that his policy was in force is reasonable considering he was current on his premium payments, consented to have further payments automatically withdrawn from his account due to his history of late payments, and signed a form stating that he had not suffered a loss during the period of cancellation, which presumably ended at the time he signed that form.

Patterson's reliance on the statements of Equity Partners is based on his belief that Equity Partners is a general managing agent for Catlin with the authority to reinstate insurance policies on Catlin's behalf. Catlin denies Equity Partners is its general managing agent, arguing instead that the insurance policy issued to Patterson lists Equity Partners as a "broker." We find it unconvincing that the label of "broker" on the insurance policy would shield Catlin from liability if, in fact, Equity Partners is acting as a general managing agent for Catlin. Whether or not Equity Partners had the authority to reinstate Patterson's insurance policy, by requiring him to fill out certain forms, and further, whether those forms, in fact, came from Equity Partners, are material issues of fact in this matter.

The issue of whether the May cancellation occurred is disputed. Patterson habitually did not pay policy premiums on time, but both Capital and Equity Partners habitually accepted the late payments. As discussed herein, although cancellation fees were assessed to Patterson's account, it is unclear how Equity Partners determined when they would initiate the process of cancellation (waiting 20 days after the May cancellation and only 11 days after the July cancellation). This record evidences inconsistencies in the procedure concerning late payments, cancellation, and reinstatement of Patterson's Catlin insurance policy. These inconsisten-

cies may have led Patterson to reasonably believe the insurance policy was in force at the time of the fire, creating an issue of material fact in this matter.

Summary judgment was inappropriate in this instance because material issues of fact exist. Although the record shows that the policy in question was properly canceled on July 16, 2012, it is unclear if the policy was reinstated on August 14, 2012, when Patterson signed the forms he claims Equity Partners produced. It is further unclear if Equity Partners is, in fact, an agent of Catlin, or if Equity Partners had the authority to reinstate Patterson's Catlin insurance policy. Thus, whether this policy was in force, or if Patterson reasonably believed it was in force on August 15, 2012, when Patterson's property was lost to fire, is a material fact at issue.[5]

## CONCLUSION

For the foregoing reasons, the summary judgment granted in favor of Catlin Specialty Insurance Company dismissing the claims of Patterson Funeral Homes, LLC, is reversed, and this matter is remanded for further proceedings. All costs of this appeal are assessed to Catlin.

**REVERSED AND REMANDED.**

APPLICATION FOR REHEARING

Before BROWN, MOORE and LOLLEY, JJ.

Rehearing denied.

---

**5.** Patterson's second assignment of error concerns the fact that the trial court did not address whether Patterson made material misrepresentations on his application for insurance. This issue was not addressed by the trial court and is not properly before this court.